IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 22 C 635 |
| | ) | Judge Ronald A. Guzmán |
| | ) | |
| JONATHAN STEPHENS, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

For the reasons stated below, Defendant's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 [1] is denied. The Court declines to issue a certificate of appealability. Civil case terminated.

## STATEMENT

**Background**

In its ruling on Jonathan Stephens' ("Defendant") appeal, the Seventh Circuit described the background facts as follows:

> In December 2016, federal agents seized from Stephens's home fifteen electronic devices with over 184,000 pornographic images and videos of children. Two years later, before federal charges were filed, undercover officers discovered that Stephens in the meantime had downloaded at least 10,000 more images and videos of child pornography. The agents also determined that Stephens had used his computer to share some of the files.
>
> Stephens was charged with five counts of transporting and possessing child pornography, and he ultimately pleaded guilty to one count of transporting in violation of 18 U.S.C. § 2252A(a)(1). A probation officer calculated the guideline range as 151 to 188 months in prison based on a total offense level of 34, see U.S.S.G. § 2G2.2, and a criminal history category of I. (Stephens had no criminal history points.) [The probation officer recommended a below-guidelines sentence of 108 months' imprisonment followed by 9 years of supervised release.]

. . .

Stephens asked the court to sentence him to the five-year mandatory minimum. In support, he relied on the probation officer's policy disagreement with the computer-based guideline enhancement. Stephens also argued that adopting a total of fifteen offense levels' worth of enhancements would result in an artificially high sentence. *See United States v. Dorvee*, 616 F.3d 174, 184 (2d Cir. 2010). He also cited a psychosexual evaluation he underwent with a clinical psychologist, who concluded that, as a child-pornography only (i.e., "no-contact") offender, Stephens was unlikely to "sexually offend in the future." Finally, Stephens asserted, his autism spectrum disorder, avoidant personality disorder, and depression diagnoses reduced his need for deterrence.

At the sentencing hearing, Stephens agreed to the guideline calculation and briefly reiterated his written arguments. He explained why he resumed amassing child pornography after officers initially seized his collection. He said that he had not yet been arrested and, at the time, believed: "I did nothing wrong, and I . . . got bored." More recently, his attorney explained, Stephens had taken "significant steps" to "make sure he does not re-offend," including participating in a cognitive skills class, behavioral treatment, and reflection.

After adopting the PSR's guideline calculations without objection, reviewing the supplemental reports and submissions, and hearing the parties' arguments, the district court sentenced Stephens to 151 months in prison. . . . Stephens possessed *more than 320 times* the 600 images needed to max out on the guideline factor.

And the images went beyond "mere" child pornography, which is awful enough to warrant some of the most severe penalties under federal criminal law. These images depicted violent, traumatic, and sadistic abuse. . . .

The court was also "very concerned about [Defendant's] ability to rehabilitate." The initial seizure, "despite [Defendant's] statements . . . had no deterrent effect whatsoever as [Defendant] found the means to collect yet another 10,000 images." And, although the court doubted that Stephens could "realize the pure evil of these images," it emphasized that his professed inability to understand was "chilling because it tells us that in the future, there is nothing to prevent him from continuing to do this."

*United States v. Stephens*, 986 F.3d 1004, 1006-07 (7th Cir. 2021) (emphasis in original and internal parenthetical omitted). The Seventh Circuit denied Defendant's appeal on February 2, 2021.

Defendant now moves for relief under 28 U.S.C. § 2255, asserting that sentencing counsel was ineffective for "two separate yet intertwined reasons." (Def.'s Mem. Supp. § 2255 Mot., Dkt. # 15, at 6.) According to Defendant, counsel first "failed to spot, and then effectively explain through expert testimony, the most crucial point to the [C]ourt—why [Defendant] chose to continue to collect child pornography after the FBI executed a search warrant on his residence and why, at the time of sentencing he was then and [is] now at low risk of recidivism." *Id*. "Second, rather than hiring an autism expert to testify regarding why [Defendant] was prone to collect items, counsel chose to let [Defendant] 'testify' regarding his actions."[1] *Id*.

**Analysis**

Section 2255(a) authorizes a federal court to grant relief where a federal prisoner's sentence "was imposed in violation of the Constitution or laws of the United States, or [if] the court was without jurisdiction to impose such sentence, or [if] the sentence was in excess of the maximum authorized by law." 29 U.S.C. § 2255(a). "Relief under § 2255 is available 'only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice.'" *United States v. Coleman*, 763 F.3d 706, 708 (7th Cir. 2014) (quoting *Blake v. United States*, 723 F.3d 870, 878-79 (7th Cir. 2013)). "Under *Strickland v. Washington*, 466 U.S. 668, 687 (1984), claims based on ineffective assistance of counsel warrant relief only when 'counsel's performance was deficient' and 'the deficient performance prejudiced the defense.'" *United States v. Lowe*, No. 22 CV 1252, 2022 WL 16540373, at *1 (N.D. Ill. Oct. 28, 2022). Moreover, "[b]oth prongs are subject to presumptions favoring the government, as courts presume both that defense counsel's performance fell 'within the wide range of reasonable professional assistance,' and that the defendant has not suffered prejudice." *Id*. (citation omitted).

Defendant first asserts that sentencing counsel was ineffective by purportedly abdicating his responsibility to present mitigating evidence that was specific to Defendant, and instead, had Defendant testify at the sentencing hearing, where he asked Defendant "odd" questions[2] and failed to make any independent argument. To the extent counsel had Defendant testify, as the government notes, given that Defendant continued to collect pornographic images after the initial

---

[1] Defendant states in a footnote that "[i]t should also be noted that Defendant was sentenced a few weeks before the COVID-19 pandemic reached popular conscience [February 26, 2020]," and therefore "sentencing counsel did not bring to the Court's attention all of the co-morbidities that would make [Defendant's] time in prison more difficult due to the pandemic." (Def.'s Mem. Supp. § 2255 Mot., Dkt. # 15, at 2 n.1.) The Court is unclear what Defendant's argument is in terms of seeking relief under § 2255. Obviously, if counsel (and indeed most of the world) was not aware of the significance of COVID-19 at the time of the sentencing, the Court cannot discern how counsel was deficient in failing to raise it.

[2] Rather than simply allocuting, Defendant testified on his own behalf at sentencing. (Def.'s Mem. Supp. § 2255 Mot., Dkt. # 15, at 2.)

search warrant was conducted, counsel's decision to have Defendant testify to ensure the Court understood that Defendant admitted to his conduct and received the three-point reduction for acceptance of responsibility was appropriate. *See United States v. Sandidge*, 784 F.3d 1055, 1063 (7th Cir. 2015) (reduction for acceptance of responsibility is warranted only when defendant "(1) demonstrate[s] sincere remorse or contrition, (2) truthfully admit[s] the conduct comprising the offense, and (3) neither falsely nor frivolously contest[s] relevant conduct.") (citation and internal quotation marks omitted). This is particularly true because Defendant made certain statements that could have compromised the Court's application of the reduction, including statements to the probation officer that he thought he was "not hurting anybody," and that he downloaded additional child pornography after the initial search warrant because he was "already busted . . . [and they are] going to send me away anyway." (PSR, Dkt. # 26, at 7.) Defendant also told the probation officer that pornography was an addiction, it made him "feel safe to have porn," and he "felt proud" he found it. (*Id*.) In addition, after the initial search warrant was executed, Defendant stated to law enforcement agents that it was the "wrongness" of the child pornography that excited him, he did not see the children as being "abused," and he hoped that the children were enjoying themselves. (*Id*. at 6.) Counsel's decision to have Defendant testify at the sentencing hearing was within the "wide range of reasonable professional assistance." Moreover, while counsel may not have verbally addressed the relevant sentencing considerations in detail at the sentencing hearing, counsel submitted a 16-page comprehensive sentencing memorandum that spoke to the factors the Court should consider in sentencing Defendant.

Defendant also faults the expert testimony counsel presented at sentencing. Counsel submitted a report from psychologist Richard "Bo" Travis, Psy.D., who states on his curriculum vitae that he is an Illinois Licensed Clinical Psychologist, an Illinois Licensed Sex Offender Evaluator, and an Illinois Licensed Sex Offender Treatment Provider.[3] (No. 18 CR 44, Dkt. # 45-1.)  Dr. Travis concluded that Defendant "will likely need a mixture of group, individual, psychiatric, and vocational treatment to meet his varied needs, to provide the support necessary for helping him to lead a fulfilling and productive life, and to further reduce his risk of sexual offending." (*Id*.)

According to Defendant, Dr. Travis' report failed to adequately address the psychological reasons Defendant may not have grasped the severity of his criminal conduct, including that

---

[3] As part of his presentence submission to the Court, counsel submitted Dr. Travis' 26-page report. (No. 18 CR 44, Dkt. # 45.)

4

▇▇▇▇ (Def.'s Mem. Supp. § 2255 Mot., Dkt. # 15, at 2.) In addition, Defendant contends that Dr. Travis did not address how Defendant's mental-health diagnoses contributed to his hoarding of images of child pornography[4] and how that issue can be addressed with treatment to reduce recidivism. Defendant challenges counsel's failure to mention Dr. Travis' report during the sentencing hearing and counsel's ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Pointing to a newly retained expert, Dr. Rachel Loftin, a Doctor of Clinical Psychology who is on the faculty of Northwestern and Yale Universities, Defendant asserts that he continued to accumulate pornography "not out of a desire to view child pornography, but rather out of a compulsion to hoard." (Id. at 9-10.) Dr. Loftin opines that given the correct treatment, which is not available in the Bureau of Prisons, Defendant "presents little risk of recidivism." (Id.) Defendant concludes that counsel was deficient in failing to hire an autism specialist and was prejudiced because he likely would have received a lower sentence had the Court been "better informed" about Defendant's ▇▇▇▇, its link to hoarding disorder, and the ability for treatment aimed at reducing recidivism.

The Court finds Defendant's contention that sentencing counsel's performance was deficient to be without merit. Counsel retained Dr. Travis, who interviewed and tested Defendant for approximately 6 hours. Dr. Travis then drafted a comprehensive 26-page report in which he concluded, in part, that Defendant had a low risk of sexually offending in the future and that his treatment needs did not require extended incarceration. (No. 18 CR 44, Dkt. # 45, at 24.) In addition, Dr. Travis indicated that the ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (Id.) Defense counsel submitted a 15-page sentencing memorandum in which he argued for a 60-month sentence, noting the inequities in the guidelines enhancements for child-pornography offenders under U.S.S.G. § 2G2.2 that "pick[] out and penalize[] characteristics which apply to virtually all child pornography offenders and funneling these characteristics into the guidelines." (Id. at 7) (citing United States v. Dorvee, 616 F.3d 174, 184 (2d Cir. 2010) (noting that § 2G2.2 is "fundamentally different from most and that, unless applied with great care, can lead to unreasonable sentences that are inconsistent with what § 3553 requires")). Counsel then discussed numerous mitigating factors, including Defendant's lack of any criminal history, his parents' divorce, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, and his father's abandonment. (Id. at 10-11). Counsel further emphasized that Defendant was ashamed of his conduct and told the probation officer that he "had a lot of guilt" about it and "now realizes that viewing child pornography perpetuates the cycle of victimization." (Id. at 8.) Counsel reiterated Dr. Travis' assessment that Defendant posed a low risk of sexually offending in the future. (Id. at 10.) Sentencing counsel's performance was within the wide range of reasonable professional assistance.

---

[4] Defendant collected nearly 200,000 pornographic images. The FBI case agent stated that it was the largest collection of child pornography that he had seen in his career. (No. 18 CR 44, PSR, Dkt. # 26, at 6.)

Nor has Defendant demonstrated that Dr. Loftin's testimony would have altered the result of the sentencing hearing. As an initial matter, the probation officer noted in the PSR that ███████████████████████████████████████████████████████████████████████ Thus, the Court was aware at the time of sentencing of Defendant's inclination to hoard pornographic materials simply because he had access to them. Moreover, Dr. Travis indicated in his evaluation that Defendant was a low risk for offending in the future and that he should continue to receive mental-health treatment, ███████████████. (No. 18 CR 44, Travis Report, Dkt. # 45-1, at 19.) Dr. Travis also noted that Defendant ███████████████████████████████████████████████ (*Id*. at 15.) Likewise, Dr. Loftin stated: ███████████████████████████████████████ (Loftin Report, Dt. # 16, at 3.) (emphasis added). Thus, both Dr. Travis and Dr. Loftin ███████████████████████████████████████████████████████████████████████, the Court does not find Dr. Loftin's conclusions to be so compelling or different from Dr. Travis' that they would have resulted in a lower sentence for Defendant.

Even considering Dr. Loftin's opinion that Defendant ██████████████ ███████████, Defendant himself admitted that he knew the "wrongness" of his actions, that the child pornography was his "deep dark secret," and that he continued to download pornographic images after the initial search warrant because he knew he was going to be "sent away anyway." Moreover, Defendant testified at the sentencing hearing that he did not resume downloading child pornography until eight months after the initial FBI search, and that he did so not only because he had not been arrested and therefore assumed he had done nothing wrong, but also because he was "bored" and had nothing else to occupy his time. (No. 18 CR 44, Dkt. # 75, at 9.) Defendant was also sharing the images and masturbating to them. Defendants' statements and behavior, of which the Court was aware at the time of sentencing, stand in contrast to any assertion that the continued collection was due solely to hoarding behavior rather than a desire to view pornographic images of children.

As to the role of rehabilitation, Dr. Loftin's conclusions regarding Defendant's ability to be rehabilitated are qualified and are not guarantees that Defendant will not reoffend: ███████ ██████████

6

(Loftin Report, Dkt. # 16, at 3-4) (emphasis added). In addition, the Court already was informed by Dr. Travis of the need for ongoing treatment ▮▮▮▮▮▮▮▮▮▮ to alleviate future offenses.

Ultimately, the Court's sentence was based on a review of all the relevant factors, including Defendant's own testimony, and did not focus exclusively on Defendant's continued collection of pornographic images after the initial search warrant. The Court was sufficiently apprised of Defendant's mental-health issues and the role they played in his offending conduct. Defendant has simply not demonstrated that Dr. Loftin's conclusions would have altered the outcome of Defendant's sentence, which was at the low end of the guidelines range.

**Conclusion**

For these reasons, Defendants' motion for relief under 28 U.S.C. § 2255 [1] is denied. Because the Court concludes that petitioner has not "made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability. Rule 11(a) of the Rules for Section 2255 Proceedings provides that a party "may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22."

**Date**: December 1, 2022

_Ronald A. Guzmán_
**Ronald A. Guzmán**
**United States District Judge**